,UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                              :
DANY ROJAS-VEGA,                              :
                                              :
                    Plaintiff,                :
                                              :
        v.                                    :        Civil Action No. 13-1540 (ABJ)
                                              :
UNITED STATES CITIZENSHIP &                   :
IMMIGRATION SERVICE, *et al.*,                :
                                              :
                    Defendants.               :
_____      :

## MEMORANDUM OPINION

Plaintiff filed this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552. This matter is before the Court on Defendants' Renewed Motion for Summary Judgment, [ECF No. 35] in which U.S. Citizenship and Immigration Services ("USCIS") and U.S. Immigration and Customs Enforcement ("ICE") explain their decisions to withhold information under Exemptions 7(C) and 7(E), and ICE explains its decision to withhold information under Exemptions 5 and 6. Plaintiff opposes the motion and has filed a cross-motion for summary judgment [ECF No. 41]. For the reasons discussed below, the Court will grant defendants' motion and deny plaintiff's cross-motion.

I. BACKGROUND

Plaintiff is "a native and citizen of Costa Rica." *Rojas-Vega v. Gonzales*, 154 F. App'x 25, 26 (9th Cir. 2005). It appears that he pled guilty to a drug offense in a California state court, *see id.*, and he subsequently was "charged with removability under section 237(a)(2)(B)(i) of the Immigration and Nationality Act based upon an October 6, 1995, conviction for possession of

1

controlled substance paraphernalia."  *In re Dany Alberto Rojas-Vega*, 2004 WL 1398634, at *1 (B.I.A. Mar. 19, 2004) (per curiam); *see* Freedom of Information Action ("Compl.") at 3.

Plaintiff states that he was aware of the potential impact a criminal conviction would have on his immigration status, and he raised his concern with the court during the October 6, 1995 proceedings.  *See* Dany Rojas's Decl. in Opp'n of Def.'s Renewed Mot. for Summ. J. [and] in Support of Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Decl.") ¶¶ 1-2.  He "informed the court that [he] would . . . plea[d] guilty to any charge[ if] no immigration consequences would result from his plea ever."  *Id.* ¶ 2.  According to plaintiff, the court adjourned the proceedings allowing the prosecutor to consult with INS, *id.* ¶ 3, and when the court reconvened "[o]n that same day," the prosecutor stated on the record "that INS . . . acquiesced to plaintiff's terms[,]" *id.* ¶ 4.  Thus, plaintiff claimed, he entered a guilty plea "reluctantly . . . after . . . assurances that a solid plea bargain was struck with INS[,]" *id.*, and "that the plea bargain would be honored," *id.* ¶ 5.  Nevertheless, "[o]n August 31, 2001 . . . INS instituted removal proceedings solely based on the 1995 conviction."  *Id.* ¶ 7; *see* Mem. of P. & A. in Support of Pl.'s Opp'n to Defs.' Mot. for Summ. J. & Cross-Mot. for Summ. J. ("Pl.'s Opp'n") at 2 ¶ 2.

The operative FOIA request in this case was submitted to USCIS's National Records Center ("NRC") in May 2012 (case number NRC2012052309).  *See* Mem. of P. & A. in Support of (1) Defs.' Mot. to Dismiss or, in the Alternative, for Summ  J. and (2) Opp'n to Pl.'s Mot. to Preserve Documents ("Defs.' First Mem."), Decl. of Jill A. Eggleston ("First Eggleston Decl.") ¶¶ 7-8.  In subsequent correspondence, plaintiff narrowed the scope of his request to information about:

1.    The State "change of plea and sentencing proceedings" in case number M707038
2.    The memos[,] bench notes and any and all related information relating to the October 6, 1995 proceedings.

First Eggleston Decl., Ex. C (Letter to USCIS, NRC, FOIA/PA Office, dated June 19, 2012) at 1. NRC staff determined that any records responsive to plaintiff's FOIA request were likely to have been located in his Alien File ("A-File"), *id*. ¶ 11, where "[a]ll official records generated or held by U.S. immigration authorities pertaining to [p]laintiff's] U.S. immigration transactions should, as a matter of course, be consolidated[,] *id*. ¶ 11 n.3.  USCIS identified 2,542 pages responsive to plaintiff's request, released 2,054 pages in their entirety, released 79 pages in part, and withheld 21 pages in full.  *Id*. ¶ 17; *see id*., Ex. H (Letter to plaintiff from Jill A. Eggleston, Director, FOIA Operations, NRC, USCIS, dated September 19, 2012).  "The . . . undisclosed information was withheld pursuant to [Exemptions 7(C) and 7(E)]."  *Id* ¶ 17.  The search of plaintiff's A-File did not locate transcripts or any other information pertaining to state court proceedings on October 6, 1995.  *Id*. ¶ 13; *see id*. ¶ 10 n.2.[1]

USCIS staff located records originating at ICE while reviewing plaintiff's A-File, and referred 388 pages of records to ICE for its direct response to plaintiff.  *Id*. ¶ 16; *see id*., Ex. G (Memorandum to Freedom of Information Act Office, ICE, from Jill A. Eggleston dated September 19, 2012).  ICE received only 379 pages, however.  Defs.' First Mem., Decl. of Catrina Pavlik-Keenan ("Pavlik-Keenan Decl.") ¶¶ 5-6.  Of these 379 pages, ICE released 71 pages in full, released 252 pages in part, and withheld 56 pages in full.  Mem. of P. & A. in Support of Defs.' Renewed Mot. for Summ. J. ("Defs.' Second Mem."), Decl. of Fernando Piniero ("Piniero Decl.")

---

[1]  Plaintiff had been notified "previously . . . that the A-[F]ile did not include a verbatim copy of the proceedings for Case No. M707038/VF0173, nor any indication which INS attorneys may have been contacted by the District Attorney's [O]ffice on October 6, 1995, nor any interview notes or memos within Plaintiff's specified date range."  First Eggleston Decl. ¶ 13; *see id*., Ex. F (letters to plaintiff dated July 23, 2003 and June 17, 2009).

¶ 12. "ICE withheld portions of the documents under . . . Exemptions 5, 6, 7(C), and 7(E)[.]" Pavlik-Keenan Decl. ¶ 8.

Plaintiff believes that transcripts of the October 6, 1995 plea proceedings were in the possession of INS, *see* Pl.'s Decl. ¶ 7, and that, in violation of the FOIA, neither INS nor its successor agencies (USCIS and ICE) released the transcripts to him. *See* Compl. ¶¶ 5, 7.

## II. DISCUSSION

### A. *Summary Judgment in a FOIA Case*

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009). On a motion for summary judgment, the Court generally "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Ordinarily, where the agency moves for summary judgment, the agency must identify materials in the record to demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1). Plaintiff as the non-moving party then must point to specific facts in the record to show that there remains a genuine issue that is suitable for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). But where, in a FOIA case, plaintiff has not provided evidence that an agency acted in bad faith, "a court may award summary judgment solely on the basis of information provided by the agency in declarations," *Moore*, 601 F. Supp. 2d at 12, provided that the declarations are not "conclusory, merely reciting statutory standards, or . . . too vague or sweeping." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987) (footnote omitted).

### B. Exemptions

The Court concluded that the USCIS conducted a reasonable search for records responsive to plaintiff's request and granted defendants' first motion for summary judgment in part on this basis. However, because neither USCIS nor ICE explained its reliance on the claimed FOIA exemptions, the Court denied its motion in part.[2] The Court now addresses each claimed exemption in turn.

### 1. Exemption 5

Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not available in discovery, it may be withheld from FOIA requesters." *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996) (internal quotation marks omitted); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975).

Deliberative Process Privilege

The deliberative process privilege "shields only government 'materials which are both predecisional and deliberative.'" *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997) (quoting *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc)). To show that a document is predecisional, the agency need not identify a specific final agency decision; it is sufficient to establish "what deliberative process is involved, and the role played by the documents at issue in the course of that process." *Heggestad v. U.S. Dep't of Justice*, 182 F.

---

[2]   The Court neither revisits the adequacy of the USCIS's search nor addresses plaintiff's challenges to the search, such as his assertions of "bad faith," *see generally* Pl.'s Opp'n ¶¶ 21-25, all of which pertain to the scope and results of the search.

Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)).  A document is "deliberative" if it "makes recommendations or expresses opinions on legal or policy matters."  *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).

Attorney Work Product Privilege

The attorney work product privilege protects material gathered and memoranda prepared by an attorney in anticipation of litigation.  *See Hickman v. Taylor*, 329 U.S. 495. 510-11 (1947). Records may be withheld as attorney work product if they contain the "mental impressions, conclusions, opinions or legal theories of an attorney" and were "prepared in anticipation of litigation."  Fed. R. Civ. P. 26(b)(3); *see Miller v. U.S. Dep't of Justice*, 562 F. Supp. 2d 82, 115 (D.D.C. 2008) (concluding that documents which "reflect such matters as trial preparation, trial strategy, interpretation, personal evaluations and opinions pertinent to [plaintiff's] criminal case" qualify as attorney work product under Exemption 5); *Heggestad*, 182 F. Supp. 2d at 8 (stating that the attorney work product privilege "covers factual materials prepared in anticipation of litigation, as well as mental impressions, conclusions, opinions, and legal theories").  Materials may be withheld under Exemption 5 under both the deliberative process privilege and the attorney work product privilege.  *See, e.g., Miller*, 562 F. Supp. 2d at 114-15; *Heggestad*, 182 F. Supp. 2d at 8-12.

Here, "ICE applied [Exemption 5] to protect from disclosure attorney work-product, attorney notes and attorney-client communications."  Piniero Decl. ¶ 15.  It withheld "records compiled by an attorney assigned to an alien's immigration case [which] include[d] handwritten attorney notes[,] correspondence regarding hearings, testimony and strategy's [sic] made in contemplation of litigation" on the ground that "[r]elease of deliberative notes could undermine attorney litigation strategy."  *Id*. ¶ 16.  In addition, ICE withheld attorney-client communications,

6

including "emails related to hearings, testimony, legal analysis and litigation strategy," as well as "correspondence containing legal questions presented, challenges, and proposed government responses." *Id*. ¶ 17.  The declarant explained that release of these memoranda, notes and emails "could chill future free communication and deliberation between attorneys within [ICE]" and inter-agency communication "between the attorneys representing federal agencies," both within ICE and involving counsel at the Departments of Homeland Security and Justice.  *Id*.

Plaintiff responds by noting that his FOIA "request involves a plea bargain, Pl.'s Opp'n at 15, which he characterizes as contractual in nature, *see id*. at 21.  He posits that in light of ICE's purported "admi[ssion] that said emails, memorandums [sic], letters, notes, [and] communications did relate to the 1995 conviction pursuant to [plaintiff's] plea bargain[,]" *id*., the information "defendants have [withheld] under [Exemption 5] . . . is discoverable under FOIA," *id*.

Plaintiff also attacks ICE's reliance on the deliberative process privilege.  For example, he challenges ICE's assertion of the deliberative process privilege to protect a six-page document containing "an email chain between [a] Department of Justice attorney and ICE trial attorney and other ICE employees," Piniero Decl., Vaughn Index at 23, arguing that these communications are post-decisional, not pre-decisional."  Pl.'s Opp'n at 17.  In plaintiff's scenario, the "decisions" would have been the plea bargain struck in 1995 and the alleged breach of the plea bargain on August 31, 2001 when removal proceedings commenced, so records generated after August 31, 2001 would not fall within the scope of Exemption 5.

It is true that the declaration and Vaughn Index merely hint at any connection between the information withheld and a particular agency decision.  But even if the deliberative process privilege does not apply, it is apparent that the same information is protected under the attorney work product privilege.  For example, the events giving rise to certain inter-agency

communications pertained to the government's positions with regard to plaintiff's immigration proceedings, *see* Piniero Decl., Vaughn Index at 6, 23-24, 29, and his habeas petition, *see id.*, Vaughn Index at 22. Among the information withheld are a "trial attorney's pre-hearing notes in preparation for trial, [his] impression of the proceedings of the merits hearing, possible questions to ask witnesses and [his] thoughts regarding the evidence presented." Piniero Decl, Vaughn Index at 6. Also withheld are an ICE attorney's handwritten notes, *id.*, Vaughn Index at 23, correspondence regarding litigation strategy, *id.*, Vaughn Index at 25, "recommendations regarding [plaintiff] and his petition for habeas corpus, as well as ICE immigration litigation strategy." *Id.*, Vaughn Index at 22. The information described in ICE's supporting declaration and Vaughn index is precisely the sort of information Exemption 5 is designed to protect. The Court therefore concludes that ICE properly withheld information under Exemption 5.

2. Exemption 6

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Any information that "applies to a particular individual" qualifies for consideration under this exemption. *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982); *accord New York Times Co. v. NASA*, 920 F.2d 1002, 1005 (D.C. Cir. 1990) (en banc). Here, ICE applies Exemption 6 "to protect from disclosure the names, signatures, initials, personal internal identifying numbers, telephone numbers and email addresses of [INS and] ICE[] attorneys, other government employees[,] and personal identifying information of third parties to include the names, addresses, phone numbers, birth dates, and identifying statements within ICE's records." Piniero Decl. ¶ 19. Plaintiff does not challenge ICE's reliance on Exemption 6, and as to this ground for withholding information, the Court will grant the defendants' motion as conceded. *See,*

*e.g., Brillhart v. FBI*, 869 F. Supp. 2d 12, 15 (D.D.C. 2012) (granting summary judgment to defendant on claimed exemptions where "[p]laintiff does not challenge, and thus concedes, defendant's properly documented reasons for redacting information . . . under FOIA [E]xemptions 3, 6, 7(C) and 7(E)").[3]

3.  Exemption 7

a.  Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm.  *See* 5 U.S.C. § 552(b)(7); *FBI v. Abramson*, 456 U.S. 615, 622 (1982).  "To show that the disputed documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law."  *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

All of the records deemed responsive to plaintiff's FOIA request were located in his A-File, that is, "the official government record" of plaintiff's "pass[age] through the U.S. immigration and inspection process."  First Eggleston Decl. ¶ 11 n.3.  "Although USCIS is the official custodian of all A-Files," the files "are shared with [ICE] and U.S. Customs and Border Protection, all of which create and contribute documents to A-Files."  *Id*.  ICE is described as "the largest investigative arm of [the U.S. Department of Homeland Security] and the second largest

---

[3]   Even if plaintiff had not conceded the matter, the Court finds that ICE properly withheld this third-party information.  Based on the Court's review of ICE's Vaughn Index, Exemption 6 is invoked in conjunction with Exemption 7(C) in each instance, and for the reasons discussed below, this same information is protected under Exemption 7(C).  *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1994).

federal law enforcement force in the nation."  Piniero Decl. ¶ 21.  Its agents and employees "prepared and compiled detention[] and removal records memorializing the steps taken in the removal proceedings of the Plaintiff . . . for the law enforcement purpose of detention and removal of criminal aliens."  *Id.*

Plaintiff argues that USCIS and ICE "have 'mixed' function[s], encompassing both administrative and law enforcement functions."  Pl.'s Opp'n at 23.  He asserts that the relevant records came about because of "the breach of promise dating back [to] August 2001," and that this alleged "illegal activity by ICE cannot . . . constitute 'law enforcement' for purposes of Exemption 7."  *Id.*  Plaintiff fails to support these assertions with any evidence in the record of this case, and thus does not rebut ICE's showing that the relevant records "were compiled for the . . . purpose of detention and removal of criminal aliens."  Piniero Decl. ¶ 21.  As have others, *see, e.g., Gosen v. U.S. Citizenship & Immigration Servs.*, 75 F. Supp. 3d 279, 288 (D.D.C. 2014) (recognizing records concerning the enforcement of a statute or regulation within USCIS's authority, whether for adjudication or enforcement, as law enforcement records for purposes of Exemption 7), this Court concludes that the responsive records, all of which are maintained in plaintiff's A-File, were compiled for law enforcement purposes.  But that is only part of the inquiry.

b.  Exemption 7(C)

Exemption 7(C) protects from disclosure information found in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552 (b)(7)(C).  In determining whether this exemption applies to particular material, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure.  *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) ("In deciding whether the release of particular information constitutes an

unwarranted invasion of privacy under Exemption 7(C), we must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect.") (internal quotation marks and citation omitted); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007). The privacy interest at stake belongs to the individual, not the government agency, *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989), and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity." *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). The D.C. Circuit has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991).

USCIS withholds under Exemption 7(C) "information relating to third-party individuals" such as "names, addresses, identification numbers, telephone numbers, fax numbers, [and] various other [information] that [is] considered personal." Defs.' Renewed Mem., Decl. of Jill A. Eggleston ("Second Eggleston Decl.") ¶ 12. For example, USCIS withholds from an Immigration Detainer "the names, direct phone numbers, and fax numbers of the INS Records Custodian and INS Immigration Agent [who] handled [p]laintiff's case." Second Eggleston Decl., Vaughn Index at 2 (Bates Number 57). Similarly, ICE "withhold[s] the phone numbers, email addresses, names, signatures, and initials of . . . INS agents and officers, ICE agents and officers, attorneys, government personnel, alien and third party individuals." Piniero Decl. ¶ 23. For example, ICE redacts "the names, email addresses and phone numbers of INS Agents, ICE Agents, Deportation Officers, governmental attorneys and government employees who performed administrative, clerical, or support functions in requesting, signing or approving documents contained within

Plaintiff's Alien File." *Id.* It also redacts "the names and phone numbers of Office [of] Chief Counsel employees and employees of [the] State of California Department of Corrections who performed administrative, clerical support or legal actions." *Id.* ¶ 24.

Although plaintiff challenges defendants' assertion that the A-File records were compiled for law enforcement purposes, *see* Pl.'s Opp'n at 21-22, he does not oppose defendants' decision to redact identifying information about the third parties mentioned in the responsive records. As to this ground for withholding information, the Court will grant the defendants' motion as conceded. *See, e.g., Neuman v. United States*, 70 F. Supp. 3d 416, 422-23 (D.D.C. 2014). But even if plaintiff had not conceded the matter, the Court finds that, based on defendants' supporting declarations, the decision to withhold this third-party information is proper. *See, e.g., Higgins v. U.S. Dep't of Justice*, 919 F. Supp. 2d 131, 148-49 (D.D.C. 2013) (withholding names of Secret Service personnel and law enforcement personnel from other agencies); *Brown v. FBI*, 873 F. Supp. 2d 388, 405 (D.D.C. 2012) (withholding names and telephone numbers of government employees and other third parties).

c. Exemption 7(E)

Exemption 7(E) applies to law enforcement information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[.]" 5 U.S.C. § 552(b)(7)(E). "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: [r]ather than requiring a highly specific burden of showing how the law will be circumvented, this exemption only requires that the agency demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d

12

1190, 1194 (D.C. Cir. 2009)) (internal quotation marks omitted).  "[I]nternal agency materials relating to guidelines, techniques, sources, and procedures for law enforcement investigations and prosecutions, even when the materials have not been compiled in the course of a specific investigation" may be protected under Exemption 7(E), *Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002) (citation omitted), and even if the documents "are not 'how-to' manuals for law-breakers," *Mayer Brown*, 562 F.3d at 1193.

"The types of documents and/or information [USCIS has] withheld [under Exemption 7(E)] could consist of law enforcement systems checks, manuals, checkpoint locations, surveillance techniques, and various other documents."  Second Eggleston Decl. ¶ 12.  For example, USCIS withholds in full a "screenshot from the Interagency Border Inspection System (IBIS) database," *id*., Vaughn Index at 4 (Bates Number 244), which is used to "keep[] track of information and records [regarding] wanted persons, stolen vehicles, vessels or firearms, license information, criminal histories, and previous Federal inspections," *id*., Vaughn Index at 5. USCIS's declarant further explains:

> Exemption [7(E)] was applied to withhold the results of background checks related to the Plaintiff as well as information related to Plaintiff's incarceration, which related to the INS investigation and determination of whether Plaintiff was subject to removal . . . . This information constitutes guidelines and procedures for the enforcement of certain immigration and national security laws and directives.  The disclosure of this information would reveal guidelines and procedures for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk circumvention of law and render the relevant guidelines useless.

*Id*., Vaughn Index at 5-6; *see also id*., Vaughn Index at 18 (Bates Numbers 993 and 1006).  For these same reasons, USCIS withholds the results of background checks related to plaintiff in printouts from the Central Index System (CIS) database, *see id*., Vaughn Index at 19-20 (Bates Number 1140), 22-23 (Bates Number 2379), a system containing "information on the status of all

13

applicants[] seeking immigration benefits [including] lawful permanent residents, naturalized citizens, U.S. border crossers, [and] aliens[,]" *id.*, Vaughn Index at 19-20 (Bates Number 1140). "Information contained in CIS is used for immigration benefit determination[s,] for immigration law enforcement operations" by USCIS, ICE, and U.S. Customs and Border Protection, and for "benefit bestowing programs" administered by federal, state and local entities. *Id.*, Vaughn Index at 20.

ICE, too, applies Exemption 7(E) "to protect investigative techniques and law enforcement procedures" including:

> escort recommendations, custody recommendations, external and internal system identification numbers, . . . other law enforcement agency database case numbers[] or identifiers, enforcement operation names, means of access to intra-agency databases [such as] case file numbers, event numbers, internal codes, computer function commands, identification numbers, and other law enforcement codes and numeric references

Piniero Decl. ¶ 26; *see, e.g., id.*, Vaughn Index at 3 (withholding "internal identifying numbers, computer codes, and computer commands" from printout of ICE detention information), and 8 (withholding details regarding custody determination from a worksheet used to rate "factors such as severity of criminal convictions, immigration violation history, and special management concerns"). For example, ICE withholds "database codes, case numbers, and numeric references . . . from TECS," a system which is a means of communication between ICE and other federal law enforcement agencies. *Id.* ¶ 27. TECS database codes serve two purposes: "indexing, storing, locating and retrieving information," and describing an investigation, such that the codes themselves "could identify the type and location of the case, the scope and size of the investigation, . . . type of activity under investigation, and location of investigation efforts." *Id.* ¶ 28. The declarant explains that disclosure of this information betrays the scope of the investigation and offers a "person seeking improper access to law enforcement data [a means] to decipher . . . the

14

codes, navigate the law enforcement system and compromise the integrity of the data either by deleting or altering information." *Id.* Further, the declarant states, because of "[t]he quality and quantity of information contained in these records," its disclosure "could impede ongoing investigations." *Id.*

ICE also applies Exemption 7(E) to "techniques involv[ing] cooperative arrangements between ICE and other agencies and inter-agency communications prompting specific actions on the part of agency employees." *Id.* ¶ 29. If this information were disclosed, the declarant explains, future investigations could be "adversely affect[ed] . . . by giving potential subjects of investigations the ability to anticipate the circumstances under which such techniques could be employed . . . and identify such techniques as they [are] being employed in order to either obstruct the investigation or evade detection from law enforcement officials." *Id.*

As was the case with Exemption 7(C), plaintiff challenges whether the responsive records were compiled for law enforcement purposes, *see* Pl.'s Opp'n at 22-24, but does not challenge application of Exemption 7(E) specifically. *See also Mezerhane de Schnapp v. U.S. Citizenship & Immigration Servs.*, 67 F. Supp. 3d 95, 101 (D.D.C. 2014) (records of USCIS queries of the Interagency Border Inspection System properly withheld); *Abdelfattah v. U.S. Immigration & Customs Enforcement*, 851 F. Supp. 2d 141, 145 (D.D.C. 2012) (program codes, investigative notes, and internal instructions properly withheld); *Techserve Alliance v. Napolitano*, 803 F. Supp. 2d 16, 28–29 (D.D.C. 2011) (noting D.C. Circuit precedent "that an agency may withhold information from disclosure where releasing such information would provide insight into its investigatory or procedural techniques"). Here too then, the Court treats defendants' arguments with respect to Exemption 7(E) as conceded.

C. *Segregability*

If a record contains some information that is exempt from disclosure, any reasonably segregable information not exempt from disclosure must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions.  5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999).  The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons,* 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

Plaintiff argues that neither defendant has shown why information in the documents withheld in full "cannot be segregated and additional portions disclosed." Pl.'s Opp'n at 15.   But USCIS's declarant avers that "[a]ll of the documents withheld [in full or in part] have been carefully reviewed in an attempt to identify reasonably segregable non-exempt information," and it was determined "that no further segregation of meaningful information . . . can be done without disclosing information warranting protection under the law."   Second Eggleston Decl. ¶ 18.  Similarly, ICE's declarant avers that he "reviewed each record line-by-line to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied." Piniero Decl. ¶ 31.  Based on this review, he states that "[w]ith respect to the records that were released in part, all information not exempted from disclosure pursuant to the FOIA exemptions specified . . . was correctly segregated and non-exempt portions were released."   Piniero Decl. ¶ 32.  The Court notes that only a small percentage of the total number of responsive records was withheld in full, and that the record reveals a diligent effort on the part of the defendants to redact exempt material while releasing the rest.  In the absence of any grounds to dispute the declarants'

assertions concerning the remaining records, the Court concludes that defendants have released all reasonably segregable information.

III. CONCLUSION

Defendants have demonstrated that there remains no genuine issue in dispute as to their compliance with the FOIA and that they are entitled to judgment in their favor.  Accordingly, Defendants' Renewed Motion for Summary Judgment will be granted and plaintiff's cross-motion will be denied.  An Order accompanies this Memorandum Opinion.


DATE:  September 23, 2015                          /s/
                                                   AMY BERMAN JACKSON
                                                   United States District Judge